We're back on the record. Next case, United States of America v. Dahl, No. 15-2271. Good morning, Your Honors. Brett Switzer with the Federal Defender's Office, here representing Appellant Dahl. At this time, I'd like to reserve three minutes for rebuttal. That'll be granted. Thank you. Your Honors, the issues have been substantially narrowed in this case by the briefing, and I think there are two. One, does the categorical approach apply at all in this case? Because I believe the government does not dispute and therefore concedes that the Delaware prior statutes, prior conviction statutes, are broader than the federal statutes. And No. 2, are the clarity and the discretionary prongs of plain error met? I would submit that the answer to both of those questions is yes. As to the first, I believe binding Supreme Court precedent answers this question. In particular, the government has been arguing, has argued in the brief, that the conduct language of Section 2426 permits a factual approach, and that's not the law. Well, maybe the two issues somewhat conflate. It isn't the strongest case as to a categorical approach. Johnson, which goes specifically to whether the conduct language is to be viewed as allowing a factual inquiry, or if it's tied, as it is under the statute here, to conviction as the focus, requires a categorical approach. But, of course, Johnson was issued a month after the decision here. So what do we do then in terms of plain error review? So Johnson is a strong case. I don't necessarily think it's necessarily the strongest case. For plain error review, we look at the law today. So Johnson, we would look at Johnson. That would count. But when we look at what the Supreme Court has said over 10 years, it's perfectly clear. It's been clear for 10 years that the conduct language triggers the categorical approach. That, at first, was decided by the Supreme Court in James. But we took, I mean, it does go back, you could look back to its origins 10 years ago, but in the interim, and just a few years ago, we have Paveluk. So unless we were in clear error there, isn't there a problem with trying to overcome the plain error standard? Because we and the Eleventh Circuit, in earlier cases, had not taken the approach that the categorical approach was yet necessary, assuming you adopt that today as to this statute. Paveluk, I think, is best viewed as a pre-day camp case. In other words, what Paveluk said was that it actually applied the categorical approach to Delaware second-degree sexual contact prior. And it said it doesn't meet the formal categorical approach. And then where Paveluk went wrong, and this is understandable because it was pre-day camp, is that it said that the inquiry doesn't end here. Now we go to the modified categorical approach. And day camp, which was decided after Paveluk, has made perfectly clear that that's not the analysis. There's a divisibility issue that needs to be resolved. Is the statute divisible? If it's not, the inquiry comes to an end. So Paveluk, I do believe, and this Court in Jones, which was cited in our blue brief, has recognized, before day camp, this Court has not always been consistent in how it applies the modified categorical approach. Do you argue that that language in Paveluk is dictum? I do argue that, although I think that's not absolutely necessary for the Court to agree with that. It is dictum because when you look at the briefs in that case, the issue of whether the prior convictions qualify was not raised. The issue in that case was an apprendee issue with respect to what the gentleman's, the defendant's statutory maximum would have been otherwise without the operation of 3559. And that, the Court applied the categorical approach. And then it went on to discuss, again, unbriefed, unraised by the parties, this issue of, well, how would we look at the Delaware priors under the federal 2241C statute? I do believe that qualifies it as dictum. But even if it does not, Your Honors, the Court today is required to apply Supreme Court law. And whether the Court would look at day camp and say that that has undermined Paveluk, whether it would look at Johnson and say that's undermined Paveluk's reference to conduct language, or whether the Court would simply say that dictum, depending on how we read it, or not even dictum, that language in Paveluk is just wrong. Either way, either of those three ways, the Court could address Paveluk, and this panel would be empowered to do that. I'm sorry, but your position is that Paveluk is just not consistent with what the Supreme Court has done. Well, that's right. And so we have to distinguish it or to overrule it to some extent. I think the Court does have to address Paveluk because it is there. I don't think necessarily overruling wouldn't necessarily go that far because, in fact, I think the Supreme Court itself has undermined it. But there is language depending. I believe the opinion can be read several different ways with respect to after it goes beyond its categorical approach analysis. And depending on how the Court reads the opinion, I think, answers the question of whether it should be distinguished or whether some language in that case should be disavowed. But I do agree that it does need to be addressed. And whether, again, I believe it's a panel issue here because either it's been the language about, look, we don't go to the categorical approach if there's not an apprendi problem. There's some language in Paveluk that states that. That is not the law under the Third Circuit or under Supreme Court. So if the Court reads the opinion that way, then I do believe it should disavow that language. But, again, not knowing what's out there on Paveluk, pivoting to plain in the plain error analysis. I mean, as Judge Krauss pointed out, not only is there our case, there's some other circuits. It was up in the air. Maybe you can make an argument regarding plain error. Sure. So plain error, we look at the law today and what's clear. Not clear when Paveluk was decided, when this case was decided in the Supreme Court, any other time today. And it's perfectly clear, even if forget James, forget did Paveluk make a mistake, was there some loose language in Paveluk. Nine months ago the Supreme Court said this conduct language does not trigger a factual approach. That's in Johnson. In fact, this argument we have not seen on the defense side in 10 years, since James. The only time it has surfaced was in Justice Alito's dissent in Johnson, where he revives it and says, in resistance to the holding in Johnson, the striking down of the residual clause of ACCA says, look, maybe we should change course here. The statute, don't forget, refers to conduct. Maybe we should just throw away the categorical approach at all and go with a factual approach, which is the argument that's being made by the government here today. And the majority clearly said no. So plain error is not an obstacle in terms of clarity here at all, because at the end of the day, regardless of the history here, Johnson makes perfectly clear that that's not a valid argument under Supreme Court law. So the only other argument the government... Are we looking at what was plain to the district court at the time of its ruling? No. Henderson, the Supreme Court, establishes that plain error review is judged as of the law when the appellate panel sits. So it's not the case that we look back at the state of the law at the time of the lower court decision. What do we do with the fact that we have at least one Supreme Court justice who thinks there is still an argument, or there was an argument as of Johnson, to a more fact-specific approach? And that, of course, isn't talking about Section 2426. That's talking about the ACCA. We're dealing with a different statute. For us to take that input and generalize it to this context, which maybe is the right outcome, but how do we say that that is so clearly required that it would satisfy plain error? Because, well, first of all, we have a majority of the Supreme Court expressly rejecting Justice Alito's position. So the fact that that argument was voiced in dissent I think is beneficial to us, frankly, because it teed it up. The Supreme Court majority took another look and said, no, we're not going there. That's not the law, and we're not adopting that now. But in terms of, as I started out in my argument, I don't believe our argument rises or falls on Johnson because we do have to look at the broader picture. And Your Honor suggested maybe it's not a great idea to extend Johnson in some way to another statutory context. And the important point here is when we look at the full spectrum of the case law from the Supreme Court, the Supreme Court has always said the categorical approach applies because and when a federal provision refers to a defendant having a prior conviction for. Taylor was a statutory construction case. It was not an apprendi case. It was 10 years before apprendi. The categorical approach, when Shepard came along, Justice Souter added the apprendi rationale as another reason for adopting the categorical approach. But what's critical is Taylor, the very first reason that Taylor gives for adopting that categorical approach is because the statute at that requires a, quote, conviction. The Supreme Court for many, many years has applied the categorical approach in immigration cases. No possible apprendi issue there. Apprendi doesn't apply in civil immigration cases. Yet what the Supreme Court has said and what this Court has said in dozens of cases is no, the categorical approach applies as a matter of textual interpretation. Again, because the statute refers to conviction. So 2426, again, refers to conviction. 4B15, does the defendant have a conviction? So that is the source of the categorical approach here. So we're not really extending Johnson or we're not relying on Johnson somehow in a way that is novel. In fact, this is compelled by Supreme Court precedent at least 10 years old. Did the district court here conduct a fact-specific inquiry? In other words, is there another sort of layer of error that should concern us as to whether the district court or the PSR and sort of anyone on this record conducted a, looking at the conduct for a fact-specific inquiry, if some kind of modified approach even were appropriate? The district court didn't because there was no objection. So there was unfortunately, this was not caught in the trial court. And so there was essentially no, there was no contesting, there was no dispute that 4B15 applied. So the district court didn't have to get involved with analyzing whether the prior convictions were actually predicates under 4B15. The government, now that we've discovered the error, the government has not disputed, of course, that the Delaware statutes are overbroad relative to the federal statutory provisions. So to put this in context, I would also explain to the court, these Delaware statutes in question, when you look at the Delaware statutory scheme, they are the lowest level of sexual contact offenses that are codified under the Delaware Code. You have the sexual contact, which has varying degrees, then above that you have sexual penetration at varying degrees, and then above that you have sexual, unlawful sexual intercourse at varying degrees. So I'm certainly not here to minimize the conduct in this case. The district court didn't have the occasion really to look at the conduct. The government, the government's argument for looking at the conduct I think is legally invalid. But that, I would submit, is, as Justice Sotomayor said in Montcrieff, the facts here are quite irrelevant. What matters is what statute the offensive conviction was, and here it was that lowest level Delaware statute. Thank you. All right. Thank you, Counsel. So, Counsel, we've got a pretty big disparity in enhancement here in terms of the sentencing. I mean, it's almost double with the enhancement. I mean, maybe the place to start is, I mean, what you might or might not be conceding with the state of the law today. Well, Your Honor, that was exactly where I was going to start, Your Honor. First of all, may it please the Court. Sorry. Pardon it. I'm here for the government. I completely disagree with the defense's interpretation of the Supreme Court jurisprudence and what that tells us about what we need to do in this case. And first of all, going back to Taylor. Taylor, Sykes, Begay, Chambers, right up to Johnson, they focus on the Armed Career Criminal Act. And in Johnson, the most recent decision, they invalidated the residual clause in the Armed Career Criminal Act. And they did so because they found it was unconstitutionally vague. Despite their four previous attempts over nine years to come up with a workable standard for the residual clause in the Armed Career Criminal Act, they were unable to do so. And they threw in the towel and they said that has – and they made sure they limited their holding to the peculiar statutory language in ACCA. Don't we have here that exact same, albeit peculiar, statutory language? No, we don't. Just as the majority rejected the arguments that were being raised by Justice Alito as to the conduct language allowing a fact-specific approach, the Court looked to the language of conviction, offensive conviction. And that's exactly what we are looking at here with the statute that talks about defining offensive conviction and what that conviction means, although we're guided there by a reference to conduct in the first instance. I disagree that the focus in Johnson was on conduct, nor was the focus in the prior decisions starting with James, which was the first case to say the categorical approach also applies to the residual clause. Taylor in the previous cases had dealt with the enumerated offenses and how to interpret the enumerated offenses. It made perfect sense. If you go back to Taylor, they gave several rationales. It wasn't limited to the fact that it was a prior conviction as opposed to committing the offense. That's a very narrow and, to me, simplistic way of looking at what Taylor grappled with. Let's focus on Johnson because I'm having difficulty distinguishing the arguments you're making from those that were being raised by Justice Alito. Again, we're dealing with a statutory scheme, a very different statutory scheme than the guideline provision at issue here. The statutory scheme, the ACCA defines a violent felony three ways, enumerated offenses, elements of the offense, and a residual clause that's defined by the preceding enumerated offenses that states otherwise presents a serious risk of injury. That is the phrase that has caused so much problem, and Johnson explains why. It's not about conduct. It's about interpreting the degree of risk posed by a particular offense. That was the exact issue in James, whether attempted burglary, which was not an enumerated offense, qualified under the residual clause as to whether or not it posed the same degree of risk as a completed burglary. They have always, for all of the subsequent cases, have focused on risk. That's where Johnson threw up its hands and said, this requires us to evaluate risk in an ordinary, idealized case, a judge-made decision. This has nothing to do at all with the guideline issue we're looking at here. It may use the word conduct, but the focus of the Supreme Court cases has not been about conduct. It's how do we measure whether an offense has the requisite degree of risk as defined by and compared to the enumerated offenses. That's why it was so complicated, and it's so different. We're talking here about a guideline provision that does not have enumerated offenses, does not refer to elements whatsoever, and then refers us to a statute that references conduct consisting of. Well, help me understand. So you're telling me that if this case happened to be this afternoon and there was going to be sentencing, the government would be taking the position that a fact-specific approach is appropriate? Yes, we would argue that the categorical approach should not apply at all to this guideline provision. And, again, looking, if I can talk for a minute about the purpose of the categorical approach and how it came about, the tailor explained that they were looking for confessional intent, and the way that Congress defined it included the word conviction, of course, because it was a recidivist statute, but also that Congress talked about, they identified enumerated offenses, they talked about elements, they focused on categories of crimes. But hasn't this gone, at this point, far beyond the ACCA? I mean, in the immigration context and in various other enhancements, we now have a lay of the land that seems pretty clearly to say you apply a categorical approach with two exceptions. If you have a bifurcated statute, you can apply a modified categorical approach, and if you have something that you can characterize as a sort of circumstance-specific qualifier, as in Yijiawan, you can take that exception as well. But otherwise, where we have an indivisible statute, we're to take a categorical approach. But this is not a statute, and that's one of the points I'm trying to make. All of the Supreme Court jurisprudence deals with statutory interpretation. The immigration cases, they're talking about the aggravated felony provision, which is a statute. We're looking to declare you a 26. There's a difference between a statute and a guideline provision. The guideline directs us to the statute in this case. It does, but that's not the whole. It directs us to a statute, but it is still a guideline provision, and we're supposed to discern the intent of the sentencing commission and not the actual congressional attempt behind the statute. And that is where you have to look at the guideline in conjunction with the language of the statute, the full provision. It requires us to determine whether the victim was a minor. It requires us to determine whether or not the offense also included receipt, possession, distribution of child pornography. And then it tells us to look at the statute, which refers to language that says consisting of conduct. That is so different than the language in ACCA, and also in the immigration context, we are dealing with a statute that lists numerous, numerous enumerated offenses, many of which are generic offenses by definition. The courts have logically applied the categorical approach to those offenses, carved out exceptions for those that have specific circumstance-related things. What we are saying here, and it's happened in the SORNA context, that's the one place where courts have been breaking with this knee-jerk application of categorical approach and taking a look at the specific language in SORNA and they've made a distinction between the elements section in SORNA and the specified offense section. Can we go back to just to start? Not yet. I'm sorry, Judge Sugar. I have a question. In terms of concessions, so we understand the framework of what we're dealing with, do you concede if the categorical, if we conclude that the categorical approach applies, by not undertaking that analysis on appeal, are you conceding that the Delaware convictions don't qualify as predicate offenses under the guidelines? They certainly don't qualify under the formal categorical approach because they do not, they're not congruous in terms of the elements. And although we believe that the modified categorical approach, that these statutes are divisible, it wouldn't help us here because we do not have any records. There are no judicial records available in this case. So we would not be able to prevail if you decide the categorical approach applies. But if I could get back to a minute. Well, because we don't, you're running out of time, so we've got to kind of move on here a little bit. One of the points your adversary brought up, again, assuming we don't agree with you, would be the time frame we should look at. Your adversary says today under Henderson, do you agree? I don't disagree that the court could look at what the state of the law is today in determining whether there was plain error. Certainly Johnson was pending at the time. We don't believe that Johnson has any bearing on the issue before this court. And that's why it's not, that just takes us astray. The Supreme Court jurisprudence, if anything, it does not dictate that the categorical approach applies to this guideline provision. How about plain? Plain error, and that's probably the most important point here, is that this is, we are having this discussion in the context of plain error review. And the question is whether the district court plain error meeting, was this settled law, was there precedent out here that required the judge to apply the categorical approach? And the answer is absolutely not. And that brings us back to Pavlov, which I believe is completely on point, not completely on point, but it's completely correct. And it is not, it's not impacted. It wasn't an Apprendi case. It was an Apprendi case, Your Honor, but where I think that this becomes important is that what the court recognized in its holding, even if it was not on the decisive issue of what's the statutory maximum here, was that Apprendi, because there was no Apprendi issue, the court was free to look at the underlying facts, not apply the modified categorical approach, look at the facts to determine if the extra requirements of that federal statute was satisfied by the underlying conduct. And they said that, they did so, and my understanding is, is because they were applying, there was no requirement that the categorical approach apply to that provision. They were following up on the shepherd's, the shepherd court's explanation for when the categorical approach, the most significant rationale for the categorical approach was Apprendi, that it was a concern that judges would make factual findings that would increase a statutory maximum, the ceiling for a particular sentence. And that actually was mentioned in Taylor as well. And the shepherd court said that the Taylor court was prescient in identifying one of the concerns as, would this abridge a defendant's right to a jury trial? The shepherd rationale was followed in Pavlov. That's exactly what the court did there, was say Apprendi answers this question. There's nothing out there telling us we need to apply the categorical approach, just as there's nothing in this case telling us out there that we have to apply a categorical approach. And therefore, the Apprendi brought us back to regular sentencing practice, which is judges make facts, find facts all the time that affect, that determine the advisory guideline range. And that's exactly the position we're in here now. It doesn't affect the mandatory minimum or the statutory maximum. Counselor, if we disagree with you as to how obvious the error is or was, given the series of cases that focus on conviction over the conduct language in another statute, are you conceding the other elements for plain error, that is specifically substantial rights, and given the addition of more than 10 years doubling the sentence, this carries your justice? Your Honor, we would concede on the substantial rights aspect of it. The Supreme Court recent decision certainly compels that conclusion. However, we would not concede that this is a case where we believe that there is no manifest injustice by the imposition of the sentence. We recognize it's a very large enhancement. On the other hand, this is a defendant, one of those rare defendants, who richly deserves it. His record is horrendous. When you read the PSR, this is someone who is a recidivist child predator. The enhancement was intended to keep people like this off the streets and away from children. Whether or not it applies, whether or not you find that it shouldn't have been applied, this is a situation where there was really no miscarriage of justice in applying the enhancement and imposing the sentence that was imposed. If I could just go back to one minute about, I think the Court is still grappling with this distinction about conduct and conviction. And I would recommend that the Court go back and look at Taylor and look at Shepard because that is such a, it's just a narrow distinction, a narrow, narrow way of approaching the rationale behind a categorical approach. And it is very much tied to ACCA, the unique statutory creature that ACCA was. And it is just not transferable to every guideline provision, every statute that uses the language conduct. And if I could just mention again the SORNA cases, they were interpreting a provision that says conduct that by its nature is a sex offense against a minor. It was a specified offense as opposed to one of the elements offenses. And four circuits have found that that does not require a categorical approach and it permits the Court to make a full factual inquiry because that language, both the text of the language and the purpose of SORNA, which is to again keep dangerous people away from children, justifies the application. And there's no circuit that disagrees. So there have been four circuits that have decided that issue under SORNA. We also believe that the immigration cases, even though they have not gone as far as to find an entire, that the Court can look at the offense conduct of an entire offense and have limited it to qualifying language, strongly suggests that there are situations where the language of the statute, we have both the second and another circuit actually recognizing that without applying it because the facts weren't in front of them, we recognize that in a situation where we are directed to look at conduct, we may not be applying the categorical approach. That's not the situation here. The courts are starting to question, again, just the across-the-board application of the categorical approach which should be limited to statutory provisions where it's mandated. What do we do here? Let's say we agree with you and we're not prepared to import Johnson to this context. In effect, you're asking that we affirm a conduct-specific approach. But isn't the reality in this case that the district court did not, or at least the record doesn't reflect, the district court actually engaged in a fact-specific inquiry, looking to the record and identifying how the elements of the offenses at issue here were satisfied from the appropriate pleadings and documents? The government had argued that the defendant's conviction for unlawful sexual contact in the first and third degree, I think in the first degree, matched up with the facts satisfied Section 2241A. That was our argument. That was before the judge. The judge agreed and he affirmed the application of the enhancement. So he didn't make specific factual findings, but our argument was premised on the facts in the PSR, and our argument was this does satisfy 2241A. We make the same argument in our brief, and that's exactly what the judge did. So the judge did not make specific findings of fact but clearly relied on the government's argument and the facts in the PSR support the court's conclusion. If we are allowed to look at the facts in the PSR, they completely support the conclusion that he has at least one prior conviction for a sex offense as defined in the guidelines. But then, in effect, aren't you asking us to undertake that analysis in the first instance? You don't need to do that, Your Honors, because this is plain error. Our position is the categorical approach should not apply at all. We know that that's an argument that this court may not want to grapple with at this point or position, because you don't need to make that finding because you can find that this is plain error and that the state of the law was unsettled. We had an experienced prosecutor, an experienced judge, a very experienced judge, and an experienced defense attorney, none of whom thought about the categorical approach in this situation. That alone suggests that this is not something that's plain and obvious, and just because a categorical approach has been applied in other contexts and may be applied too often without close scrutiny of the issue does not mean that the court committed plain error in this context. So we believe the court does not even have to make a specific finding as to whether the categorical approach applies to this statute because of the plain error standard. Thank you. Thank you. Thank you, Your Honors. The notion that the categorical approach does not apply to the guidelines is not a proper question for this court. That would require overturning about 30 years of Third Circuit case law. I wasn't even aware that that is the position of the Department of Justice. However, this court need look no further than Judge Ambrose's decision in Brown two years ago, where he was the most recent, as far as I'm aware, reiteration of this point. We apply the categorical approach to the guidelines, even though it's not ACCA, and we're bound by precedent to do so. That was in 2014 in Brown. So that's not a panel question. On the merits, it fails as well. The only distinction my colleague can draw between the guidelines and the statute, this purported dichotomy, first of all, the guidelines are statutes, number one, but number two, and more importantly, the only conceivable distinction you can draw is an Apprendi distinction. In other words, under the ACCA, there's a change in the maximum, whereas under the guidelines, there aren't. And the Supreme Court has made perfectly clear, and this goes to the conduct versus conviction point, which was my colleague's other main argument. The Supreme Court has made perfectly clear that the categorical approach does not turn on Apprendi concerns. How do we know that? Immigration. In Montcrieff, Justice Sotomayor says the key, and I would point the court to Montcrieff, she says the key, the statutory hook is conviction, is, quote, conviction, the requirement of a, quote, conviction, not conduct. And that's why we apply the categorical approach. Apprendi is a million miles away from any immigration case. So when you look at, and my colleague says, please go look at Taylor, look at Shepard, and I agree, please go look at those cases, because what you'll find is Taylor says, first and foremost, the number one reason, conviction. Second, we don't want mini-trials. Third, it's unfair, because sometimes there will be old records, sometimes there won't be. We don't really want a person's doubling of a guideline range to turn on that sort of vicissitude. That's the reason. So this decision will have an effect on every case where the guidelines make reference to a specific statutory section? That is, it will go beyond this particular, it will be a rule of broad application? Well, I'm not asking for a new rule. So it would apply, the categorical approach already is my position, already applies to guidelines provisions. And so what I'm asking the court to do is simply not change course. I understand, but I gather from what the government has said that it would be a rule of broad application where there's reference to statutory sections in the guidelines. I think that's right. I think when you have a recidivist enhancement under the guidelines, no matter if it's 4B1.5 or 4B1.1, the career offender guidelines, the court already applies the categorical approach there. It applies it under 201.2. So I do believe the categorical approach has a broad application in the guidelines. But that, again, that's not an extension of Johnson. That's not an extension of APCA cases. Counsel, your adversary ended up with kind of an interesting point. You know, we're well aware of the great competence of your office as well as the U.S. Attorney's Office and the judge here. No one thought of this. If it's so clear, why didn't anybody bring it up? It's a mistake, Your Honor, and it's unfortunate. The guidelines are complicated. In fact, in Melina Martinez, the most recent plain error case decided by the Supreme Court only a few weeks ago, the defense counsel actually filed a manager's brief on an issue where there was a valid guidelines error argument and, in fact, that the Supreme Court finally said, yeah, actually that's a plain error. So it happens. It's unfortunate. It's a reality of the system. And, again, Nijawan, again, this conduct versus conviction, and my colleague says, well, that wasn't really the focus of anything. I would point the court to Nijawan because there the Supreme Court says, and Justice Breyer is writing, and he says, we looked at this in James, and it was a harder question whether to apply the categorical approach because the statute says conduct. So we looked at this, and yet we did it. And why we did it is because the important word is conviction. So Nijawan, already years ago, again, James, but Nijawan in particular puts to bay any question that this was something that somehow flew under the radar. Nijawan is also significant, though, because what we addressed as a qualifier that the Supreme Court has talked about for circumstance specific and the BIA even last week is incorporating into its own rulings for some types of qualifiers. I take it the position that you're urging us to espouse is a categorical approach, but as to 4B1.5, to the extent it talks about that offense as to a minor, that is something that the sentencing court could look to the underlying facts. It's a Nijawan sort of qualifier on top of the categorical approach you're asking the court to take. Yes, the qualifier, the factual approach applies to the qualifier. That wasn't the error in this case, but we wouldn't be here if there was fact-finding as to the age. That's permitted under Nijawan. Thank you, counsel. Thank you, Your Honors.